Defendant-appellant Stanley Akins ("Akins") appeals from his bench trial conviction for one count of Kidnapping (R.C. 2905.05) and one count of Domestic Violence (R.C. 2919.25). For the reasons adduced below we affirm in apart, and reverse and remand in part.
A review of the record on appeal indicates that on November 30, 1997, at approximately 6:00 p.m. to 7:00 p.m., Cleveland police officers were dispatched to a home located at 3026 East 123rd Street. At the scene, the two officers found a female, the victim Ms. Vicky Patterson, crying and shaking. The victim testified that she answered the door as the police knocked on it. The police officers testified that Akins answered the door and that either the victim was in the front room or was called by Akins from the bedroom while she was crying. The victim was wearing a nightgown and a bathroom robe. The police separated the two people and interviewed them in different rooms of the home. Officer Beitel interviewed the victim in the kitchen, and Akins was escorted to the front room by Officer Preston. While Officer Beitel attempted to interview the victim, the dialogue was repeatedly interrupted by shouts from Akins in the other room urgently, and profanely, directing the victim to tell the police that Akins did not hit her.
The victim, a forty-two year old woman, testified that she and Akins had a violent relationship since they first started dating. She related how Akins was consumed with exercising authority over her and controlling aspects of her life. As examples, the victim recounted how: Akins would telephone her at her evening shift job approximately twenty times a night to ensure that she was actually at work; her friends stopped visiting her over time because of the abusive attitude of Akins; and, Akins previously went to prison for eighteen months after stabbing her in the face and she filed domestic violence charges against him. According to the victim, Akins attempted a reconciliation with her within a few months after being released from prison. After some discussions between the two, the victim consented to permitting Akins to move in with her, temporarily, at East 123rd Street address because Akins was allegedly homeless and destitute. The victim stated that Akins contributed no funds toward the home expenses.
The victim next testified how Akins became verbally abusive to her on November 29, 1997, and fearing her safety, caused her to leave her home that day and sleep overnight at a friend's house. She returned to her home at approximately the noon hour of November 30, 1997. On that date, at approximately 1:00 p.m., she received a telephone call from a friend who wanted her to go shopping with her; the victim consented to go shopping with her friend. As the victim was dressing to go shopping, Akins told her that she "wasn't going any damn where." (R. 67.) As the victim reached for pieces of clothing to put on, Akins would grab the clothing and toss it into the kitchen sink which was full of dirty dishes. The victim then tried to obtain clothing from her closet, but Akins would tear that clothing from her hands, throw it on the floor and pour water on it. She then tried to put a trench coat on and leave, but Akins ripped the coat from her body and repeated his admonition that "Bitch, you aren't going any place." (R. 67.) Akins then knocked the victim to the floor and broke a nearby lamp. He then took a piece of broken glass from the shattered lamp, placed it against her throat, and, using profanity, threatened to cut her face. (R. 68.) The victim, in great fear at this point, urinated on her person. After this demonstration, Akins, again lacing his oratory with profanities, ordered the victim to get up from the floor, clean the mess up and go to bed.
The victim, as ordered, cleaned up the mess and went to her daughter's bedroom and closed the door as she attempted to rest and recover from the abuse. She also disrobed at one point in the bedroom. Akins came in the bedroom at one point and removed the cordless telephone. For approximately five hours, she could hear Akins pacing outside the bedroom door and roaming around the home.
At approximately 6:00 p.m. to 6:30 p.m. on November 30, 1997, the victim took a telephone call from her girlfriends, Gloria and Joann, using the cordless telephone which was delivered to the bedroom by Akins after the telephone rang. Upon the advice of the girlfriends, the victim contacted the police, whereupon the police dispatcher told the victim to get dressed and remain on the telephone until the officers arrive.
In their view of the scene, the officers observed: a trench coat with a torn collar in the garbage; broken shards of glass on the porch; a broken lamp in the front room; wet articles of clothing in the first floor hallway and in the dirty kitchen sink.
Akins, the defense's only witness, testified in his own behalf. He is forty years old and claimed to have a tempestuous, but nice, relationship with the victim. Akins admitted to being unemployed, but said he contributed his monthly welfare check of $125 and food stamps toward the house expenses and also helped do cleaning around the home. Akins stated that he, the victim, and the victim's daughter had moved him into the house on the day prior to the offense. Akins claimed that his hip was hurting from having moved boxes so he and the victim indulged in narcotics (crack cocaine) and alcohol, getting high, and that the victim became angry because he did not want to engage her in sex. Next, Akins claimed that on the day of the incident, the victim left the house, so he and the daughter cleaned the home. When the victim returned to the home, she was, according to Akins, high on drugs; they argued. The daughter was not around at that time. He claimed that he told the victim that he had broken the lamp that day while cleaning. He also admitted to having thrown some of the victim's dirty underwear into the kitchen sink, but he denied attacking her. He claimed that after arguing they went to separate rooms, that he did not take the telephone with him, and that she stayed in the daughter's bedroom all day talking and laughing. Akins said that the victim could have left the home at any time on the day of the fight.
Akins was convicted on both counts and he was sentenced to three years for the kidnapping, and one year for domestic violence, the sentences to run consecutive.
This appeal presents three assignments of error for review. Oral argument has been waived by the parties.
I
 IN CONVICTING APPELLANT OF KIDNAPPING UNDER R.C. 2905.01 (A) (3) WHEN THE STATE PRESENTED NO EVIDENCE OF REMOVAL, RESTRAINT, OR PURPOSE TO TERRORIZE, THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
In this assignment, Akins argues that the trial court erred in not granting his motion for acquittal pursuant to Crim.R. 29 (A) due to insufficiency of the evidence. Crim.R. 29 (A) provides, in pertinent part:
 The court on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also see State v. Thompkins
(1997), 78 Ohio St.3d 380, 386; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The offense of Kidnapping under R.C. 2905.01 (A) (3) provides in pertinent part the following:
 (A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (3) To terrorize, or to inflict serious physical harm on the victim or another.
In viewing the evidence in a light most favorable to the prosecution, we conclude that there was ample evidence of violence and intimidating threats to demonstrate that Akins purposely terrorized the victim so as to restrain her liberty of movement and association.
Appellant also argues within this assignment that the two offenses herein are allied offenses of similar import. See R.C.2941.25. A two-part test is used in determining whether two offenses are allied offenses of similar import. See Newark v.Vazirani (1990), 48 Ohio St.3d 81. Under the first part of the Newark test, the elements of the offenses are compared and, if they correspond to such a degree that the commission of one offense will result in the commission of the other offense, the offenses are allied offenses and the court then proceeds to the second step of the test. In the second part of the Newark test, the conduct of the defendant is reviewed to determine whether the defendant can be convicted of both offenses. If the court determines that the offenses were committed separately or that there was a separate animus for each offense, the defendant may be convicted of both offenses.
The offense of Domestic Violence pursuant to R.C. 2919.25 (A) provides:
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
Akins, in cohabitating with the victim within one year prior to the offense, qualifies as a "person living as a spouse" for purposes of establishing the element of "family or household member." See R.C. 2919.25 (E).
Comparing the two offenses sub judice, it is readily apparent that the elements do not correspond so that the commission of one results in the commission of the other. The kidnapping offense at issue requires a restraint of the victim's liberty which is achieved through the application of terror to the victim; physical harm, or the threat of physical harm, which is the sine qua non of domestic violence, is not necessary to achieve terror. Accordingly, having failed the first part of the Newark test, the two offenses herein are not allied offenses of similar import.
The first assignment of error is overruled.
II
 IN OVERRULING APPELLANT'S OBJECTION TO "BAD ACTS" CHARACTER EVIDENCE, ACTIVELY ELICITING THAT EVIDENCE, AND CONSIDERING THAT EVIDENCE AS PROBATIVE OF AN ESSENTIAL ELEMENT OF KIDNAPPING, THE TRIAL COURT CONTRAVENED THE PURPOSES OF EVID.R. 404 (B) AND VIOLATED MR. AKIN'S DUE PROCESS RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Evid.R. 404 (B) prohibits the admissibility of "other acts" evidence to prove the "character of a person in order to show that he acted in conformity therewith . . ." However, this evidentiary rule permits the admission of "other acts" evidence as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." See Evid.R. 404 (B); R.C. 2945.59. The "other acts" evidence at issue consist of Akins' prior domestic violence and a felonious assault against the victim herein and the fact that he had been imprisoned for those offenses. This evidence was not offered to prove that Akins had a violent character, but was admitted to prove that Akins used violent behavior, and threats of such behavior, as a motivation to control the victim. Thus, the use of this evidence was proper. In the alternative, if the evidence was improper, it is presumed that in cases tried to the bench that a judge only considers relevant and admissible evidence. See State v. Jells
(1990), 53 Ohio St.3d 22, 30. In the present case, aside from the other acts evidence, there was sufficient evidence upon which to convict Akins. If the admission of such other acts evidence was error, it cannot be demonstrated that the error was prejudicial; instead, such error was harmless because, but for the error, the result of the trial would not have clearly been different. Crim.R. 52.
The second assignment of error is overruled.
III
 THE TRIAL (sic) ERRED IN SENTENCING APPELLANT WITHOUT COMPLYING WITH THE REQUIREMENTS OF R.C. 2929.19 (B) (3) (b), (c) AND (e) WHICH REQUIRED THE COURT TO NOTIFY HIM THAT HE IS SUBJECT TO R.C. 2967.11 ("BAD TIME") AND R.C. 2967.28 ("POST-RELEASE CONTROL")
This appellate court was recently faced with a similar failure by the trial court in not complying with the post-Senate Bill 2 notification requirements under R.C. 2929.19 (B) (3). In State v.Davis (June 18, 1998), Cuyahoga App. No. 72820, unreported, at 15-17, this notification failure necessitated a reversal of the sentence and a remand for resentencing in accordance with R.C.2929.19. Accordingly, Akins' sentence is reversed and the matter remanded for resentencing in compliance with the notification requirements of R.C. 2929.19.
The third assignment of error is affirmed.
Convictions affirmed; sentencing is reversed and remanded.
This cause is affirmed in part and reversed and remanded in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ANN DYKE, P.J., and LEO M. SPELLACY, J., CONCUR.
 ___________________________________ JAMES D. SWEENEY JUDGE
N.E. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1).